IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EDUARDO GOMEZ,              )
                            )
            Petitioner,     )
                            )
     v.                     )    1:12CV116
                            )
ROBERT LEWIS,               )
                            )
            Respondent.     )

**MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**AULD, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On March 24, 2008, in the Superior Court of Forsyth County, Petitioner pled guilty to habitual impaired driving, driving while impaired and driving while license revoked in cases 06 CRS 54787, 06 CRS 58399, and 07 CRS 54199. (Docket Entry 6, Exs. 1, 2; see also Docket Entry 2, ¶¶ 1-6.) In accordance with the plea arrangement (see Docket Entry 6, Ex. 1 at 6),[1] the trial court sentenced Petitioner to 21 to 26 months of imprisonment for the consolidated offenses of habitual impaired driving and driving while license revoked in each of the three cases. (Docket Entry 6, Ex. 3; see also Docket Entry 2, ¶ 3.) The sentences were run consecutively. (Id.) Petitioner did not appeal his convictions. (Docket Entry 2, ¶ 8.)

---

[1] For portions of Respondent's memorandum in support of his summary judgment motion lacking internal pagination, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

On June 23, 2010, Petitioner filed a pro se motion for appropriate relief ("MAR") with the state trial court. (Docket Entry 6, Ex. 6; see also Docket Entry 2, ¶¶ 10, 11(a).)[2] Petitioner submitted an amendment to the MAR to the trial court on September 21, 2010, arguing that State v. Gentry, 135 N.C. App. 107 (1999), provided support for his grounds for relief. (Docket Entry 6, Ex. 7.)[3] The trial court denied the MAR by order dated March 8, 2011 and filed March 10, 2011. (Docket Entry 6, Ex. 8; see also Docket Entry 2, ¶11(a)(7)-(8).) Petitioner then filed a pro se petition for a writ of certiorari with the North Carolina Court of Appeals which he dated as submitted on October 25, 2011 (Docket Entry 6, Ex. 9 at 6), and which that court received on November 22, 2011 (id. at 1). The Court of Appeals denied that petition on December 7, 2011. (Docket Entry 6, Ex. 7.) Petitioner resubmitted his certiorari petition to the Court of Appeals in a filing which he dated on January 10, 2012, and which that court received on January 13, 2012 (Docket Entry 6, Ex. 15 at 1, 2; see also Docket

---

[2] Petitioner alleges in his Petition that he filed his MAR with the trial court in January 2010. (Docket Entry 2, ¶ 11(a)(3).) The various copies of the MAR in the record before the Court reflect that Petitioner signed the MAR on January 5, 2010; however, none of such copies contains a file-stamp by the trial court which would indicate the actual date on which the trial court filed the MAR. (See Docket Entry 6, Exs. 6, 9, 12.) The trial court, in denying the MAR, noted that the MAR was filed on June 23, 2010. (Docket Entry 6, Ex. 8.) The Court need not resolve this conflict, because as discussed below, the Petition is untimely using either date in the timeliness analysis.

[3] While his MAR was pending with the trial court, Petitioner filed a mandamus petition with the North Carolina Court of Appeals requesting that court to order the trial court to rule on his MAR. (Docket Entry 6, Ex. 12; see also Docket Entry 2, ¶ 11(c).) Petitioner dated the document as submitted on January 25, 2011 (Docket Entry 6, Ex. 12 at 3) and the Court of Appeals filed the document on March 14, 2011 (id. at 1). On March 29, 2011, the Court of Appeals denied the petition as moot, as the trial court had already issued its order denying the MAR on March 8, 2011. (Docket Entry 6, Ex. 14.)

-2-

Entry 2, ¶ 11(c).) Petitioner asserted that he had corrected certain procedural defects in his first certiorari petition and requested the court to reconsider his petition on its merits. (Docket Entry 6, Ex. 15; see also Docket Entry 2, ¶ 11(c).) The Court of Appeals denied the petition on January 26, 2012. (Docket Entry 6, Ex. 17; see also Docket Entry 2, ¶ 11(c)(7).)

Petitioner thereafter submitted his Petition in this Court (Docket Entry 2), which he dated as mailed on February 1, 2012 (id. at 14), and which the Court received on February 3, 2012 (id. at 1).[4] Respondent moved for summary judgment on statute of limitation grounds and on the alternative grounds that the claim in the Petition fails as a matter of law. (Docket Entry 5.) Petitioner filed two separate responsive documents, which he styled as "motions." (Docket Entries 8, 10.) The undersigned terminated the second responsive document as moot. (See Text Order dated Aug. 3, 2012.) Upon the written consent of the parties, the Court referred this case to the undersigned Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(c). (See Docket Entry 11.)

## **Petitioner's Claim**

Petitioner raises one claim for relief in his Petition: the trial court erred by using the same three driving while impaired convictions both to elevate the charged offenses to habitual impaired driving and to increase his record level points. (Docket Entry 2, ¶ 12.)

---

[4] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

-3-

**Discussion**

Respondent requests summary judgment primarily on the ground that the Petition was filed[5] outside of the one-year limitation period. 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[5] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

-4-

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case.[6] As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain

---

[6] Petitioner argues that, under 28 U.S.C. § 2244(d)(1)(D), the one-year statute of limitations should begin to run from the date he "found" a "controlling case" that established "the factual predicate" of his claim. (Docket Entry 8 at 3.) He claims he discovered State v. Gentry, 135 N.C. App. 107 (1999), "a month before he filed his MAR" (id.), which would have been in December 2009, crediting Petitioner's claim that he filed his MAR in January 2010 (Docket Entry 2, ¶ 11(a)(3)). Petitioner's argument lacks merit. The date on which Petitioner actually "found" Gentry is immaterial, as that date relates only to when he discovered the legal significance of his claim, as opposed to the facts supporting such a claim. See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)("[T]he trigger in § 2244(d)(1)(D) is (actual or imputed) discovery of the claim's 'factual predicate', not recognition of the facts' legal significance."); see also Diver v. Jackson, No. 5:11-HC-2155-FL, 2012 WL 3228971, at *3 (E.D.N.C. Aug. 6, 2012) (rejecting argument under § 2244(d)(1)(D) that limitations period should start on date inmate told plaintiff of relevant Supreme Court case, because that was merely date plaintiff discovered legal significance of his claim and not facts underlying such claim), appeal dismissed, 487 F. App'x 96 (4th Cir. Nov. 6, 2012). The factual predicate of Petitioner's claim, i.e., that the trial court had improperly used the same three prior driving while impaired convictions both to elevate the charges to habitual impaired driving and to calculate his prior record level points, existed at the time of his conviction, and he could have discovered it through reasonable diligence at any time thereafter. Under the facts alleged, Petitioner is not entitled to a delayed commencement of the statute of limitations under § 2244(d)(1)(D).

when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, the state trial court entered judgment against Petitioner on March 24, 2008. (See Docket Entry 6, Ex. 3.) As Respondent has asserted (Docket Entry 6 at 2-3), and Petitioner has not disputed (Docket Entry 8 at 1-4), Petitioner's convictions became final on that date because he pled guilty and received sentences in the presumptive sentencing range for his class of offense and prior record level. See N.C. Gen. Stat. § 15A-1340.17(c) & (d) (2008). In North Carolina, defendants who plead guilty have very limited grounds on which they can appeal. See State v. Smith, 193 N.C. App. 739, 741-42, 668 S.E.2d 612, 613-14 (2008) (enumerating limited grounds for appeal for defendants who plead guilty); see also N.C. Gen. Stat. §§ 15A-979(b) & 15A-1444. Petitioner has not alleged or otherwise shown that any of these grounds existed and thus Petitioner had no right to appeal. Under these circumstances, Petitioner's time to file a habeas petition in this Court began to run on March 24, 2008. Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004); accord Redfear v. Smith, No. 5:07CV73-03-MU, 2007 WL 3046345, at *2 (W.D.N.C. Oct. 17, 2007) (unpublished); Marsh v. Beck, No. 1:06CV1108, 2007 WL 2793444, at *2 (M.D.N.C. Sept. 26, 2007) (unpublished).[7] The limitations period then ran for 365 days until it expired a year later on March

---

[7] Even if Petitioner had possessed a right to appeal, any such right would have expired 14 days after the trial court entered judgment against him. See N.C. R. App. P., Rule 4(a)(2). Given when Petitioner filed his instant Petition, those 14 days would not affect the timeliness analysis.

-6-

24, 2009, nearly three years before Petitioner brought this action under § 2254.

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral filings in the state courts until either January 25, 2010 (as Petitioner alleges) or June 23, 2010 (as Respondent alleges), either of which are well after his time to file a federal habeas claim had already expired. State filings made after the federal limitations period has passed do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner does not dispute the foregoing time-line, but he does advance a reason why he believes the Court should consider the Petition despite its untimeliness. (Docket Entry 8 at 2-3.) In other words, Petitioner requests equitable tolling, which doctrine the Supreme Court has ruled applicable in this context. See Holland v. Florida, 560 U.S. ___, ____, 130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

-7-

Under a heading entitled, "The Absence of a Fixed Appellate Deadline Under North Carolina Law," Petitioner asserts that "[u]nder North Carolina law, a non-capital prisoner may file a [MAR] challenging a guilty plea for 'any error' within 10 days of entry of judgment, and anytime after that for 'certain errors.'" (Docket Entry 8 at 2.) Petitioner then contends that certiorari petitions challenging the denial of MARs "must be filed '[w]ithout unreasonable delay.'" (Id. at 3 (citing N.C. R. App. P. 21(c)).) Petitioner argues that, under the "doctrine of laches," his Petition is not untimely because it was neither filed after an "unreasonable delay" nor was injurious or prejudicial to Respondent, citing Patterson v. Patterson, 529 S.E.2d 484, 492 (N.C. App. 2000). (Docket Entry 8 at 3.) Thus, Petitioner appears to contend that because North Carolina imposes no fixed filing deadline for either a MAR or a certiorari petition, his Petition is timely so long as not barred by the "doctrine of laches." (Id. at 2-3.) Petitioner's argument (and particularly his reliance on the doctrine of laches) lacks merit.

The passage in 1996 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1), which mandates the one-year limitations period at issue here, superceded Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts. See Langley v. Director, Dep't of Corr., No. 2:09cv436, 2010 WL 2483876, at *6 (E.D. Va. May 28, 2010) (unpublished) (noting that Rule 9(a) and doctrine of laches were

superseded by passage of AEDPA and finding petition untimely).[8] Under AEDPA, whether Petitioner's delay was "reasonable" or whether Respondent was "prejudiced" by Petitioner's delay is immaterial to the timeliness analysis. Petitioner clearly did not file his Petition within the one-year limitations period proscribed by AEDPA and, thus, the only remaining question is whether Petitioner has established any grounds that warrant equitable tolling.

In order to be entitled to equitable tolling, Petitioner must demonstrate that he has exercised diligence in the pursuit of his rights. See Holland, 560 U.S. at ___, 130 S. Ct. at 2562. Here, Petitioner fails to explain why he could not have discovered Gentry or otherwise diligently pursued this matter prior to the expiration of the one-year limitations period. "'[E]quity is not intended for those who sleep on their rights.'" In re Wilson, 442 F.3d 872, 875 (5th Cir. 2006) (quoting Fisher v. Johnson, 174 F.3d 710, 715 (5th Cir. 1999)). Accordingly, Petitioner is not entitled to equitable tolling on these facts.[9]

**IT IS THEREFORE ORDERED** that Respondent's Motion for Summary Judgment (Docket Entry 5) is **GRANTED,** that the Petition (Docket Entry 2) is **DENIED,** and that this action be, and the same hereby

---

[8] Rule 9(a) provided that "[a] petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in the ability to respond to the petition by delay in its filing."

[9] Under these circumstances, the Court need not reach Respondent's arguments addressed to the merits of Petitioner's claims. Moreover, to the extent that Petitioner's responsive document (Docket Entry 8) includes a request for appointment of counsel, the Court will deny that request. The untimeliness of the Petition forecloses a finding that this case presents extraordinary circumstances warranting appointment of counsel.

-9-

is, **DISMISSED**.  A Judgment dismissing this action will be entered contemporaneously with this Order.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

Date: February 27, 2013